# Mobile and Montgomery Railway Co. v. Clanton.

### *Action of Assumpsit.*

1. *In a suit against a corporation by an employee, it may recover damages caused by his fault.*—A railroad corporation may recover damages resulting from the negligence of an employee in the performance of his contract of service, when sued by the employee to recover his wages.

2. *A corporation may sue an employee for damages caused by his negligence.*—When damage results to cars and other property of a corporation from the negligence of an employee in the performance of his duties, it may recover damages in an action against him.

3. *The measure of damages in such a case is fixed by a legal standard.* The measure of damages in such a case is fixed by a legal standard; and the corporation having the right to maintain an action against the employee, it may when sued by him to recover wages, set off by plea such damages, and if the facts justified it, recover a judgment for the excess.

4. *The imperfect equipment of a train will not excuse negligence in an employee.*—The imperfect equipment of a train does not relieve the conductor from the exercise of due care and diligence in its management.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

This suit was brought by Edwin H. Clanton, at the February term, 1877, of the City Court of Montgomery, against the Mobile and Montgomery Railway Company, to recover wages earned by the plaintiff as a conductor of one of its freight trains.

The defendants pleaded " in short, by consent, *first,* Recoupment—the defendant having sustained damage equal to the amount claimed by plaintiff by reason of the neglgence of the plaintiff as a conductor on defendant's railroad; and *secondly,* Set-off."

[Mobile and Montgomery Railway Co. v. Clanton.]

The amount due the plaintiff was proven. The evidence also showed that during the journey of a freight train, under the charge of the plaintiff from Montgomery to Mobile, an accident had happened without any fault of the plaintiff, by which the cab attached to the rear of his train was destroyed, and the bell-rope belonging to the train was also broken and lost. This happened on the 15th day of December, 1876. On the night of the 17th of that month, the plaintiff was ordered to take his train back from Mobile to Montgomery. No cab was attached to the train, and no bell-rope was supplied by the yard-master, whose duty it was to make up the trains. The plaintiff objected to setting out with the train so imperfectly equipped, but was told unless he took the train out, another person would be employed to do so.

On the hindmost car was a hook on only one side, upon which a lantern could be hung as a signal. There should have been one on each of its sides. All the cars were closed and locked. The plaintiff had the keys to them, but was not authorized to open them except at the places to which the freight in them was to be carried. The plaintiff rode with the engineer. It was his duty to report at every telegraphic station the condition and progress of his train. At one of these stations he telegraphed that his train was " all right," although before reaching that station one of the cars had broken from the train and was resting on the track; it was left in the rear, a distance of about seven miles. After running six miles farther he discovered that the hindmost car had broken loose. The train was, at the time of this discovery, distant thirteen miles from the car. The passenger train of the defendant was known to be following his train ; but there was not time for him to return to the car before the passenger train, running on schedule time, would arrive at that place.

The evidence proved that the night was dark, and where the car was left, the fog was dense ; and when the smoke fell on the train, it was impossible for the engineer to see the lanterns on the rear of the train. The plaintiff did not tell the engineer who rode on the right side of the engine, that he had hung the lantern on his side, not on the last, but on next to the last car.

The testimony also showed that the passenger train ran into the box-car left by the preceding train on the track, and " damaged it to the extent of seventy-five dollars, and the pilot on the engine of the passenger train, worth one hundred dollars, was destroyed." The evidence tended to show " that

the collision could not have been prevented by proper vigilance and skill on the part of defendant's servants in charge of the passenger train. And, also, that the yard-master in Mobile was not the proper person to whom plaintiff should have applied for a bell-rope and cab-car, but that he should have applied to Pegram, the agent, under whose directions the yard-master makes up the trains as ordered; and, also, that between the place where said car was dropped and where plaintiff discovered it was left, there were four curves sufficient to enable one setting in the engineer's or fireman's seat to have seen the lights attached to the hindmost car by looking back, and even when the road was straight, such lights could be seen by leaning over and looking back, except when the smoke came down on the train."

Among other matters, the court gave the following charges, to each of which the defendant severally and separately excepted.

"That the Mobile and Montgomery Railway Company is bound to furnish and maintain suitable instrumentalities for the discharge of the duties it requires of its employees, and if the jury believe from the evidence that the company did not properly equip the train on which the accident happened, on the 17th of December, the defendant can not recoup, and the jury must find for the plaintiff.

"If the jury believe from the evidence that the yard-master at Mobile was the agent of the defendant, and was acting of Mr. Pegram, agent of the defendant at Mobile, and acted as such agent in making up the trains, and that the plaintiff notified the yard-master that the train was imperfectly equipped, then such notice was notice to the defendant, and the plaintiff was not liable for the damage that occurred in consequence, but is entitled to recover.

"That if defendant sustained damages by reason of the negligence of the plaintiff while in defendant's employment, defendant might recoup to the extent of its entire claim, but that damages resulting to defendant by plaintiff's negligence, could not be the subject of a set-off."

CLOPTON, HERBERT & CHAMBERS, for appellant.—1. The defendant can recoup from the plaintiff's wages the damages sustained by the negligent performance of the plaintiff's duties as conductor.—Waterman on Set-off, §§ 474–5, 469, 483; 13 Ala. 586; 34 Ala. 201.

2. An important question in this case was, whether the plea of set-off was a proper defence. This was raised by the

last charge of the court. According to the evidence, the injury done appellant's property was in money value more than the appellee's wages. We claim that under the Code the damage done in this case allowable under the plea of set-off.—Code, § 2642; 52 Ala. 525-6.

SANFORD & MOSES, for appellee.—1. The appellant is bound to furnish and maintain suitable instrumentalities for the work or duty which it requires of its employees, and it is "liable for any damages flowing from such neglect of duty."—76 Penn. St. Rep. 389; S. C. 18 Am. Rep. 412-15; 3 P. Smith's Reps. 453; 2 Wright, 104. Since this is true, it follows that it can not recoup "damages flowing from such neglect of duty in an action brought by its employee for wages due from the company.

2. It is conceded that no neglect of duty on the part of the railway company would justify negligence on the part of the employee. But no negligence of the appellee was proven. The fault of the company in failing to equip the train, rendered the care and diligence of the plaintiff unavailing.

3. It is not denied, that from the wages of the plaintiff the amount of damages sustained by the company by reason of the negligence of the plaintiff, could have been recouped from his wages. A charge to this effect was given by the court. There was no evidence that the plaintiff was indebted to the defendant on any contract whatever. All charges must be construed in reference to the facts of the record. The application of this rule will show the court did not err in its charges.

MANNING, J.—Appellee, Clanton, who was plaintiff in the City Court, was conductor of freight trains on the railroad of appellant. The cab-car, or caboose, at the end of a train under his charge, got damaged, without his fault, on its passage to Mobile. The cord also was broken by which communication was maintained between it and the engine at the front. And when a train was made up for him, for the return trip, to come up at night, he was not furnished according to his request, with a cord that should connect the rear car with the locomotive, and was obliged to take a place with the engineer in the locomotive at the head of the train. One of the hooks, also, by which lamps with red lights are fixed to the two sides at the rear end of the hindmost car, that it may among other reasons, be seen from the engine in front whether the train is complete or not, was broken off.

[Mobile and Montgomery Railway Co. v. Clanton.]

Plaintiff, therefore, attached but one lamp to that car, and hung the other on the hook upon the side of the next car before the last one, and on the opposite side of the train. This was the same side which the engineer occupied in the locomotive, while Clanton sat on the other side, where only the light on the hindmost car could be seen from the locomotive. He did not inform the engineer that the light which the latter could see, was not on the hindmost car, but on the next in front of it. And the engineer was thus justified in considering the train complete as long as he could see that light. It was a duty of the conductor as well as the engineer, to look well to his train, and keep it together.

On the way up, this hindmost car loaded with freight and locked, got detached from the train, which proceeded thirteen or fourteen miles further before this fact was discovered. Behind it, as Clanton knew, a fast passenger train was coming up from Mobile. And his train stopped five minutes at a station seven miles distant from the place at which the detached car was left upon the track; and while there, it being his duty to report by telegraph from that point for the train following him, the condition of his train, he dispatched back a message that it was all right.

A short time afterwards, the upward bound passenger train without any fault of its engineer or conductor, ran into the detached car, damaged it to an amount of nearly two hundred dollars, and broke off the pilot to the engine of that train, causing a still further loss.

Clanton asked of the yard-master in Mobile, whose business it was to make up the freight trains, for a cord, which was not furnished him. He was told that he must apply for it in Montgomery, and that if he declined to conduct the freight train up, another conductor would be directed to do so: and he came with it, to avoid losing his place. There was some evidence that the application for a cord was not made to the right person.

Having been discharged by the company, Clanton sued it for his wages in arrear, and by pleas of set-off, and recoupment, the defendant insisted that he should be charged with the loss it had sustained by the collision which was produced, it is contended, by his negligence.

The court, among other charges to the jury, gave the following, which was excepted to on the part of the company: " The Mobile and Montgomery Railway Company is bound to furnish and maintain suitable instrumentalities for the discharge of the duties it requires of its employees: and if

[Mobile and Montgomery Railway Co. v. Clanton.]

the jury believe from the evidence that the company did not properly equip the train on which the accident happened on the 17th of December, the defendant can not recoup, and the jury must find for the plaintiff."

The fault of this charge is that it relieves the plaintiff of responsibility for all the consequences of his own negligence, as an employee of the company, if he was guilty of any, on this occasion. The law is justly very strict in requiring railroad companies, in behalf of their customers and the public who depend upon them for transportation of persons and property, to be provided to the utmost of their power, with the means of safely performing their duties as carriers. Among the most important of the instrumentalities to this end, are faithful, competent and vigilant employees. More accidents are probably occasioned by their inattention, than in any other manner. Now and then, when a great disaster with the loss of many lives, is caused by the carelessness or recklessness of a railroad engineer or conductor, the public become, perhaps, unreasonably furious, and clamor to have him hanged. But except on such occasions, they are apt to forget that negligence on the part of such agents, while running railroad trains, is almost always but little less than a crime. A score or more of persons might probably have been killed or maimed by the collision in question, if it had happened at a place a hundred or two yards from that at which it occurred : and a loss of thousands of dollars, instead of hundreds, might have been thereby cast upon the company. Is it not evident, then, that if this collision was caused by a plain neglect of duty on the part of the conductor, and could have been avoided by a due degree of watchfulness, that it was manifest error to say that because the train was not perfectly equipped, he is not responsible?

Moreover the charge in question ignores the well established difference between the liability of a railroad company to its employers and its liability to its employees,—its responsibility to its customers the public, and that to the persons in its service. As we said in the *Mo. & Montg. R. R. Co. v Smith*, (in manuscript) the former pay the company to perform services for them ; the latter are paid by the company to perform work for it. Their skill and diligence are bargained for, because needed for the purpose of making repairs, completing equipment and preventing accidents, to the end of enabling the company safely and efficiently to fulfil its engagements. And they are paid according to the character and exactions of the service. Generally, also, there-

must be co-operation with them on the part of other employees of the company in the work to be performed. Wherefore it has often been ruled that as between their employers and themselves, employees assume the ordinary risks and perils of the service, including those arising from the negligence of their fellows in the same work.

Whether, however, the fault of not having the freight train, on this occasion, fully equipped, be chargeable upon the company or its servant, the yard-master of Mobile, is a matter of no consequence here. If it was the fault of either, and that was the cause of the collision and damage complained of, and these are not attributable to the negligence of Clanton, he is not liable for the loss occasioned thereby; but if they are attributable to his negligence, he is liable.

It may often happen, by accident or otherwise, that a company's railroad, or trains on it are out of order and can not immediately be perfectly equipped,—while at the same time it has duties to perform as a carrier which can not well be delayed until everything is in perfect order. The consequences of delay may be more serious than the probable consequences of sending a train forward without being completely equipped. There may, indeed, be very little risk in doing the latter under careful management. And unquestionably, a conductor who, knowing the deficiences, undertakes to carry such a train through, is bound to use all the diligence and watchfulness that are reasonably necessary to do so successfully. And it follows that he is responsible for the damages that may happen by reason of his negligence. His vigilance should be proportioned to the importance and delicacy of the task assumed.

We have referred to some of the facts in this case and the possible deductions from them, only in explanation of the law on the subject. It must not be inferred that we are of the opinion that the accident complained of was caused by the fault of Clanton. Whether it was or not, is a question to be answered only by a jury. It seems to be admitted that he was in no way responsible for the uncoupling of the hindmost car. And, perhaps, he was not to be blamed for not having found out that it was uncoupled in time to prevent the accident that followed. There was evidence that the night was foggy, and that the smoke of the locomotive hung low, and, perhaps, sometimes, prevented the lamps from being seen. It is a case for a fair and just inquiry by the jury whether the damage produced by the accident is to be ascribed to Clanton's negligence or not. But the jury should be informed

[Mobile and Montgomery Railway Co. v. Clanton.]

that if it is chargeable on him, he is not to be exonerated from liability, merely because when he undertook the service, there were deficiencies which were not concealed from him, in the equipment of the train; but not such as should have prevented a conductor, who was duly careful, from carrying it safely through.

If the jury should find Clanton chargeable with the damages, there is no doubt that the company may be allowed to recoup them against his wages.

In respect to set-off, the law now is that " mutual debts, liquidated or unliquidated demands *not sounding in damages merely,* subsisting between the parties at the time of suit brought, may be set off one against the other."—Code of 1876, § 2991. Whenever the defendant can maintain a cross action at law because of matters arising out of the plaintiff's breach of the contract sued on, and the damages recoverable are fixed by a legal standard, such damages may be insisted on as a set-off in an action upon the contract.—*Eads v. Murphy,* 52 Ala. 526, and cases cited. If Clanton is liable for anything in this case, it is, for not performing, with due vigilance and diligence, his contract to serve as conductor. And if the loss resulting from such negligence consists only of the damage done to cars or other property, the amount of which depends upon the expense of making them good by repairs, or of putting the defendant in these particulars in as good a condition as it was in before,—such damages may be considered as " fixed by a legal standard." The computation is founded on the ascertainable values of material things, as it would be in an action of assumpsit concerning the same values.

And where such damages are set off by a defendant and exceed the amount of plaintiff's claim, according to section 2992 of the Code of 1876, a verdict and judgment for the excess. may be rendered upon a proper plea of set-off in favor of the defendant.

Let the judgment of the Circuit Court be reversed and the cause remanded.