[McDonald v. Alabama Midland Railway Co.]

# McDonald *v.* Alabama Midland Railway Company.

*Action by Administrator against Railroad Company to recover for Alleged Negligent Killing of his Intestate.*

1. *Judgment upon demurrer; sufficiency to support an appeal.*—A judgment entry in reference to rulings of a trial court upon demurrers interposed to the complaint, which recites that "defendant thereupon demurred and assigned several separate and distinct grounds * * as shown by the record, which demurrers having been argued * * * were, by the court, duly considered," is an insufficient judgment by reason of its failure to show formal judgment of the court upon the demurrer; and upon appeal the rulings of the lower court upon the demurrer as presented in such judgment entry will not be reviewed.

2. *Action against railroad company for alleged negligent killing of brakeman; contributory negligence.*—In an action by an administrator against a railroad company to recover for the alleged negligent killing of plaintiff's intestate, it was shown that the plaintiff's intestate was in the employment of the defendant as a brakeman upon a freight train, and that while engaged in switching at a station on the defendant's road the conductor instructed the plaintiff's intestate to couple a car standing on the track to other cars that were to be switched down to the stationary car; the conductor telling him that he would couple the two cars which were to be switched down when the train backed up to them. The stationary car was some distance from the other cars which were to be coupled to it; the distance variously estimated by witnesses from ten to fifty feet. Upon receiving the orders the plaintiff's intestate went on the track between the car standing thereon and the others that were to be pushed down to it, from which position he could not see the signals given to the train crew or the movements of the engine and cars as they approached him, and in this position he remained. The cars were pushed back by the engine without being attached to it and moved rapidly towards the plaintiff's intestate on a down grade. Owing to the speed of the train the conductor failed to make the coup-

[McDonald v. Alabama Midland Railway Co.]

ling which he had told the plaintiff's intestate he would do. From the position assumed by the plaintiff's intestate, he was unable to see the failure of the conductor to make the coupling, and could not discern the speed of the cars as they approached him, and in attempting to make the coupling while still standing on the track he was knocked down by the force of the cars, was run over and killed. *Held*: That upon such facts the plaintiff's intestate was guilty of contributory negligence, precluding a recovery.

APPEAL from the Circuit Court of Dale.

Tried before the Hon. J. W. FOSETR.

This action was brought by J. F. McDonald, as administrator of the estate of Jesse L. McDonald, against the Alabama Midland Railway Company; to recover damages for the alleged negligent killing of plaintiff's intestate.

The complaint as originally filed contained five counts. Demurrers were interposed to the 5th count. The judgment entry in reference to such ruling on these demurrers is copied in the opinion. After the ruling upon the demurrer to the 5th count of the complaint, as originally filed, there was then an amendment to the first count of the complaint, which was substituted for the original count. Pleas were interposed to this count, and the trial was had upon issue joined upon said pleas. The allegations of said count and the other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

Upon the introduction of all the evidence the court at the request of the defendant gave to the jury the general affirmative charge in its behalf; to the giving of which charge the plaintiff duly excepted.

There were verdict and judgment for the defendant. The plaintiff appeals, and assigns a serror the several rulings of the trial court to which exceptions were reserved.

R. H. WALKER, BORDERS & CARMICHAEL and ESPY & FARMER, for appellant.

A. A. WILEY, *contra.*

TYSON, J.—There was no judgment upon the sustaining by the court of the demurrer to the fifth count of the complaint. The judgment entry simply recites "the defendant thereupon demurred and assigned several separate and distinct grounds of demurrer, as shown by the record, which demurrers having been argued by counsel and understood by the court were by the court duly sustained." The judgment entry should have proceeded further and shown a formal adjudication by the court such as, "It is, therefore, considered by the court that the demurrers be and they are hereby sustained." There being no judgment upon them, we must decline to consider the correctness of the rulings of the court with respect to them, and if this was all that appeared in the record for review the appeal would have to be dismissed.—*Jasper Mercantile Co. v. O'Rear*, 112 Ala. 247; *Morgan v. Flexner & Lichten*, 105 Ala. 356; *Park v. Lide*, 90 Ala. 246; *Baker v. Swift & Son*, 87 Ala. 530.

The case was tried upon an amendment to the first count of the complaint, which appears as a substitute for the original, the pleas of not guilty and contributory negligence, and other pleadings which it is unnecessary to consider in determining the question presented.

The plaintiff relied for a recovery upon the negligence of the engineer. After reciting in the complaint the fact of employment by defendant of plaintiff's intestate and the order to him by the conductor in charge of the train to make a second coupling, the conductor to make the first, known as a double coupling, and the location of the cars with relation to each other and to the engine, and the position assumed by the conductor and plaintiff's intestate, for the purpose of making the couplings, the complaint alleges the negligence of the engineer to consist in pushing "his engine back against a lot of loose cars without having his engine at the time coupled to the same or, if coupled, the said engineer cut loose from the same before they reached the first named two cars, where the first coupling was to be made. That said engineer Hayden reversed said engine contrary to the rules of said defendant and pushed with force against said cars just before cutting loose said engine and left them going on a down grade without the protection of the en-

gine to hold the cars when they should strike, which it [they] did with such force as without this protection to the conductor as to cause him to fail and refuse to make the first coupling. That said negligence of said engineer *in cutting loose* his engine at the time alleged, knowing that no brakeman was on the train to stop it, and that the said engineer knew it or by the exercise of a proper observance, which it was his duty to do under the circumstances he would have known it, and known that the deceased, McDonald, was between the cars to be coupled for the purpose of making the coupling, which was the business in which the engineer and brakeman at the time were engaged as well as the deceased and which caused the death of said McDonald. That the plaintiff's intestate, in obedience to the orders of said conductor who under the rules of said defendant was bound to obey, was already between said cars or so near thereto, that he could not foresee this last named danger of the cars coming back without being attached to the engine, and having a right at the time to believe that the first coupling would be made, obeyed his instructions and made the second coupling as ordered and that when the cars struck, having nothing to hold them, they passed over his body and he was crushed to death. That this negligence was the cause of his death."

Only one witness was examined who saw the unfortunate accident, and it appears from his testimony that at the time the conductor ordered the intestate to make the second coupling, while he would make the first, that the engineer was about three hundred and fifty feet away on his engine engaged in switching cars; that after the conductor said to McDonald, "You make the second and I will make the first," to which McDonald replied, "All right Cap, but you be sure to make yours," which was all that was said between them; the conductor, Dorman, went to the south end of the two cars standing coupled together, some one hundred and fifty feet distant, and took his position on the outside of the track and rails where he could see the movements of the engine and cars for the purpose of making the first coupling, and McDonald went to the gap between the two cars and the single car which he was to couple and took his position

on the track between the rails upon which the cars were standing, where he could not see "whether the engine was approaching from the switch or what Dorman was doing, or the train that was approaching or whether or not it was dangerous for him [deceased] to make said coupling." The space on the side-track between where the engine started for the purpose of making these couplings to the platform of the depot building of about three hundred and fifty feet was occupied by the five cars attached to the engine, an unoccupied space of fifty feet between the north end of the fifth car from the engine and the south end of the car to which Dorman was to make his coupling, and a space the measurement of which was unknown to witness between the two attached cars and the car to which McDonald was to make his coupling. The length of each car was shown to be thirty feet. By a mathematical calculation the space which was unknown to witness can be very readily approximated. Putting the length of the engine at fifty feet and the space between the last car attached to it and the one Dorman was to couple at fifty feet, as stated by witness, and the eight cars at thirty feet each, we have only three hundred and forty feet of space of the three hundred and fifty feet accounted for. This calculation is based upon the assumption that the north end of the car which McDonald was coupling was opposite the south platform of the building. Its exact location with reference to this platform is not well defined by the evidence in the record. The witness, however, stated it was several feet distant from the two cars to be coupled by Dorman. And perhaps a more accurate ascertainment of the space can be arrived at from the statement of the witness, that Dorman left McDonald at a point near the north end of the car which he was to couple and walked about one hundred and fifty feet to the south end of the two cars. We have then the space of one hundred and fifty feet covered by the three cars and the gap between the single car and two attached cars. On this basis of calculation, there was about fifty feet between them. We have then approximately ten feet under the most favorable construction of the testimony to appellant, or fifty feet under the construction that the bill of exceptions must be con-

[McDonald v. Alabama Midland Railway Co.]

strued strictly against appellant, as the distance the cars had to roll before reaching McDonald. And, notwithstanding, they approached him with rapidity upon a down grade, he remained upon the track between the rails and between the approaching train of cars and the standing car. It appears that Dorman, the conductor, did not order him to go upon the track to make this coupling and that Dorman in attempting to make his coupling prudently stood beside the track and outside of the rail. It does not appear how the engine was "cut loose" as averred in the complaint from the five cars which the witness says were attached to it. Pretermitting a discussion of the question as to whether the evidence showed that it was ever coupled to these cars and "cut loose" and the effect of a failure to prove the averment of the complaint "that the engineer reversed the engine contrary to the rules of the defendant company and pushd with force against the cars before cutting his engine loose," we can rest a decision of this case upon the negligence of the plaintiff's intestate. We cannot well perceive how he could have, under the facts disclosed, which we have referred to at some length, been more indifferent to consequences likely to result in disaster to his personal safety than was shown by him on this occasion. With an opportunity to leave the track before the rushing, uncontrolled train of cars reached him, he refused or at least failed to do so. Only one or two steps would have placed him safely beyond peril and extricated him from an obviously dangerous position which he had voluntarily assumed. And this, too, in the beginning by placing himself upon the track, where he could neither see the signals given by the conductor to the train crew or the movement of the engine and cars as they approached him. However, as we have said, after the cars attached to the engine were turned loose they had to travel a distance of fifty feet before striking the two attached cars and the seven had to go a distance of either ten or fifty feet before reaching him, gathering momentum as they went down the grade. Certainly his remaining where he was under the circumstances, when by a casual observation it would have been apparent to him that he was in great danger, can only be attributed

reasonably to his inattention. This want of attention or observance by him of that care which a prudent man would have exercised under the same circumstances was negligence, and if it contributed proximately to the injuries resulting in his death, which unquestionably it did, defeats a recovery in this case.—*Tenn. Coal, Iron & R. R. Co. v. Herndon*, 100 Ala. 451; *L. & N. R. R. Co. v. Orr*, 91 Ala. 548; *George v. M. & O. R. R. Co.*, 109 Ala. 245; *M. & C. R. R. Co. v. Graham*, 94 Ala. 545; *Andrews v. Birmingham Mineral R. R. Co.*, 99 Ala. 438; *M. & B. R'y Co. v. Holborn*, 84 Ala. 133.

There was no error in giving the affirmative charge for the defendant.

Judgment affirmed.