65 So.2d 152

### HILLER et al. v. GOODWIN.

#### 6 Div. 180.

Supreme Court of Alabama.

April 30, 1953.

Lange, Simpson, Robinson & Somerville, Birmingham, for appellants.

Wilkinson & Skinner, Birmingham, for appellee.

PER CURIAM.

This is an action to recover damages for personal injuries received by appellee, plaintiff below, while a crated furnace weighing over nine hundred pounds was being unloaded at plaintiff's place of business from a truck operated by appellants, defendants below, as a common carrier of freight from one point in Alabama to another. The furnace reached its destination in a haul by defendants to plaintiff. There were verdict and judgment for plaintiff, from which defendants have appealed. No complaint is made as to the amount of the damages awarded.

The complaint alleged that the proximate cause of plaintiff's injuries was the negligence of a servant of defendants, acting in

the line and scope of his employment in and about unloading said item of freight.

The defense was not guilty and contributory negligence. Other defenses were set up by special pleas, but the court sustained demurrer to them. They set up matter which is probably involved in appellants' contention that they were due the affirmative charge. We will proceed to discuss the contention. It is in short that the servant of appellants claimed by the evidence to have negligently caused plaintiff's injury, though the general servant of appellants had become *pro hac vice* the servant of appellee in and about the unloading of said freight. Or that if the act of appellee's agent in aiding in the process of unloading was negligent, proximately contributing to plaintiff's injury, he was in so doing acting in the line and scope of his authority as plaintiff's servant and did not become *pro hac vice* the servant of defendants.

The particular contention of appellants in that connection is that the Alabama Public Service Commission had promulgated two rules applicable to common carriers of freight by motor truck in intrastate commerce. They were put in evidence and numbered 21 and 205, respectively, and are as follows:

"Rule 21. Sec. 1. Where an article (or articles) in a single container or shipping form tendered, weighs 500 lbs. or more, or if the greatest dimensions exceeds 8 feet or greatest and intermediate dimension each exceeds 4 feet, loading or unloading shall be performed by the shipper or consignee, as the case may be. If requested, carriers will undertake, in behalf of the shipper or consignee, as the case may be, to employ additional help. No charge will be made for labor performed by the truck driver but a charge of one dollar and twenty-five cents ($1.25) per hour or fraction thereof, for each man furnished, other than the truck driver, shall apply from time vehicle arrives at the place of pickup or delivery until shipment is loaded or unloaded, as the case may be.

"Exception—The provisions of Sec. 1 will not apply if such article (or articles) weighing less than 500 pounds:

"(a) exceeds 8 feet, but does not exceed 22 feet in its greatest dimension and does not exceed 2 feet in any other dimension, or

"(b) if it does not exceed 10 feet in its greatest dimension and does not exceed 5 feet in its intermediate dimension and does not exceed 1 foot in its least dimension.

"Rule 205. Exceptions to Rule 21 of National Classification—Special Equipment Required for Loading and Unloading

"(a) Except as otherwise provided in individual rules, article or articles in a single container or other shipping form, which on account of weight, height, length or bulk requires special loading or unloading devices such as cranes, winches, hydraulic jacks, etc., carriers will, subject to available equipment, furnish such accessorial service.

"(b) Where the carrier performs either the loading or unloading and furnishes special lifting devices at the request—or with the consent—of the shipper or consignee, a charge of $7.50 per hour will be made for the use of such lifting device, which includes the services of the truck driver and/or operator.

"(c) When additional help is required a charge of $1.25 per hour will be made for each man furnished, other than the truck driver and/or lifting device operator.

"(d) In computing time under this rule, when more than one (1) hour is involved, any fractional part of a half hour will be computed as a one-half (½) hour, and begins when special equipment is dispatched from carrier's warehouse and ends when such equipment is returned and reaches carrier's warehouse.

"When special equipment is used in over-the-road service, it shall be the duty of carriers to dispatch such equip-

ment via the most direct route and in computing time in this service, time consumed in transit will be based on allowing two (2) minutes for each mile of travel involved."

Those rules are alleged to have been authorized by Title 48, section 301 (5), Pocket Part, Code, which merely makes it the duty of the commission "To supervise and regulate common carriers in all matters affecting the relationship between such common carriers and the traveling and shipping public."

Appellee, in the first place, attacks the validity of those regulations in the light of due process involving the freedom of contract. We will not need to respond to that contention. But will for the present regard the regulations as proper, in accord with such a reserved holding by the Mississippi Supreme Court in Columbus & Greenville R. Co. v. Owens, 153 Miss. 628, 121 So. 265, 62 A.L.R. 521.

Since appellants' contention in that respect is a right to the affirmative charge, it must be treated in the light of the evidence most favorable to appellee. Appellee was engaged in the sheet metal business in Fayette, Alabama, and was receiving a shipment consisting of sheets of galvanized metal, and included a crated furnace weighing about nine hundred pounds, hauled by appellants to appellee's place of business. The furnace was located on the floor of the truck near the front, and was the last to be moved. Mr. Cunningham was an employee of appellee, generally aiding in the handling of material. He got on the truck to aid the driver in unloading it. No one told him to do so. He and the driver agreed that more help was needed. The office secretary who was checking in the freight went inside to call plaintiff to help. No other employees were in reach at the time. Plaintiff went out there in response to the call of his office clerk. Appellants as the carrier had not been requested by appellee to perform the unloading operation for him. Neither had appellee been advised that the shipment having arrived was ready for him to perform the duty required by the rule.

When appellee went out to help unload, the furnace had been pushed along the floor of the truck to its rear end with the end of the furnace extending out over the floor of the truck. Appellee testified that he had ordered the item but did not know of its arrival until they called him to help unload. When he went out there he found the crated furnace sticking out of the rear end of the truck which was backed up to the sidewalk. The driver of the truck was on the ground on one side of the crated furnace and Cunningham was in the truck. The driver told plaintiff to take one corner of the crate and that he would take one and Cunningham could help lower it to the sidewalk. Appellee took hold of the left hand corner and when Cunningham turned it loose, it skidded and fell striking appellee and seriously injuring him.

The immediate question is whether the driver under those circumstances became the servant of appellee for that operation, though he remained in the general employment of appellants. It is contended that under those regulations it was the duty of appellee to unload the furnace, and that the driver, though he might have been negligent, was the servant of appellee, and appellants were not responsible for the consequences of his negligence.

The majority of the authorities sustain the view that the driver did not as a matter of law become *ipso facto* for that operation the servant of appellee, though the regulation be valid and served to burden appellee with a duty to unload the furnace.

In the Owens case, supra, the Mississippi Supreme Court seemed to hold as a matter of law that when the duty to unload is on the shipper and not the carrier, the carrier's employees are agents of the shipper and not of the carrier in performing that service. There was no elaboration of that view nor authorities cited.

The question again came before the Supreme Court of Mississippi in the case of Yazoo & Mississippi Valley R. Co. v. Denton, 160 Miss. 850, 133 So. 656. In that case a person was injured by the negligence of a railroad porter who was assisting a mail clerk in loading United States mail onto a train of the defendant railroad company. The court held that the porter had

ccased to be the servant of the railroad in performing the task but was that of the postal authorities and exonerated the railroad company. The opinion referred to the case of Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480, to which we will refer later. The Denton case reached the United States Supreme Court. Denton v. Yazoo & Mississippi Valley R. Co., 284 U.S. 305, 52 S.Ct. 141, 142, 76 L.Ed. 310. That opinion also referred to and quoted from the Anderson case, as holding that the carrier's liability is not wholly determined by whether the porter was the general servant of the carrier, "but upon whether the work which he was doing at the time was their (carriers') work or that of another; a question determined, usually at least, by ascertaining under whose authority and command the work was being done. When one person puts his servant at the disposal and under the control of another for the performance of a particular service for the latter, the servant, in respect of his acts in that service, is to be dealt with as the servant of the latter and not of the former." The court then analyzed the relation between the carrier and the postal authorities, holding that loading and unloading mail is solely the province of the postal authorities.

Now considering the Anderson case, supra, we find the Standard Oil Company was having its vessel loaded by a master stevedore under contract to do so. The stevedore employed longshoremen, and one of them was injured by the negligence of a winchman employed by Standard Oil Company in operating a winch. Both the winch and winchman were owned and employed, respectively, by Standard Oil Company and let to the stevedore who had the loading contract. He paid Standard one dollar and a half per thousand for the hoisting by the winch operated by the negligent winchman. The particular supervision of the operation by the stevedore was discussed. Trying without a jury, the court held that the winchman remained the servant of Standard, and it was held liable for his negligence. This was a conclusion of fact drawn by the trier of the facts. The Denton case, 284 U.S. 305, 52 S.Ct. 141,

142 quoted from the Anderson case as follows: "A question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work."

The precise question seems to be answered against appellant in Ramsey v. New York Central R. Co., 269 N.Y. 219, 199 N.E. 65, 102 A.L.R. 511, annotated on pages 514, et seq. It was said in that case "A crane operator in the general employment of a railroad company does not become the servant of a consignee in operating the crane in unloading cars, so as to exonerate the railroad company from liability for negligence, although employees of consignee helped in the work and gave directions from time to time as to details, and though, under tariff provisions of the Interstate Commerce Commission, the consignee was required to unload the car." And "In determining whether the general master of a servant or one to whom the servant has been loaned or hired is responsible for the servant's acts he is to be deemed the master who has the supreme choice, control and direction of the servant, and whose will the servant represents not merely in the ultimate result of his work, but in all its details." In that connection the opinion analyzed Standard Oil Co. v. Anderson, supra, and Denton v. Yazoo & Mississippi Valley, supra, 284 U.S. 305, 52 S.Ct. 141, and found nothing in them which conflicts with the construction of the law made in the Ramsey case, supra.

In addition to the foregoing principle the rule also is that when a regulation puts on the consignee the duty of unloading freight, nevertheless such act may be included in the charge made by the carrier for performing it, though the duty to unload is resting on the consignee. (This is expressly authorized by regulation No. 205 [b], supra). It is said to be a transportation service within the meaning of the Commerce Act, Railroad Retirement Board v. Duquesne Warehouse Co., 326 U.S. 446, 66 S.Ct. 238, 90 L.Ed. 192. It should follow from that reasoning that when the railroad is performing the duty of the consignee in unloading, it is not as an agent of the consignee but as a carrier

rendering a transportation service for which the consignee is liable to pay. It was assumed in that case that the carrier as such could render that service and made a charge, such as provided in the regulation, supra.

In the instant case the driver of the carrier immediately took charge of the unloading. Appellee did not ask the driver to help perform the appellee's duty under the regulation which provides expressly that the consignee does not pay the driver for his service.

Many pertinent cases are annotated in 102 A.L.R. 514, et seq. While the case of Columbus & Greenville R. Co. v. Owens, supra, seems to make the duty to unload the test of whether the servant is that of the consignee, that is not in accord with other authorities as pointed out in 9 Am. Jur. 702, section 467.

We think the responsibility does not follow *ipso facto* the duty to unload, but depends upon whether in the operation the direction of the details of it were undertaken by the consignee or by the carrier. That question was properly submitted to the jury by the court.

From the above discussion, we think the affirmative charge was properly refused appellant. Therefore, assignments 3, 4, 5, 6 and 7 are not well taken since they are based on the refusal of such charges.

Assignments of error 9 and 10 are based on the judgment of the court sustaining demurrer to special pleas. Those pleas set out in full the regulations Nos. 21 and 205, and predicate a judgment for defendant on the assumption that under them the duty to perform the unloading operation was on appellee because of the duty imposed by the regulations. But we have shown that, assuming the existence of such duty, the result does not follow as a matter of law that the truck driver became the servant of appellee and was not acting in the line and scope of his duty as the servant of appellants. In their argument counsel for appellants do not insist upon error as to those pleas, if their contention raised by their request for the affirmative charge is not sustained. We agree that it is properly

raised by their request for such charge, to which we have responded.

Assignment of error No. 12 relates to the judgment of the court sustaining the demurrer to plea 7, which is as follows:

"7. Plaintiff ought not to recover of the defendants by reason of anything set forth in said count, for that:

"Defendants aver that on the occasion complained of an agent, servant or employee of the plaintiff, named Cunningham, who was assisting in the unloading of said heavy article, while acting within the line and scope of his employment as the agent, servant or employee of the plaintiff, so negligently handled said article, while attempting to assist in unloading it, as to cause it to fall and injure plaintiff on said occasion; that said negligence proximately contributed to plaintiff's said injury."

There is no doubt as to the correct phraseology and application of facts alleged in the plea. Circuit Court Rule 37, Title 7 Appendix, Code, Pocket Part; Birmingham Electric Co. v. Carver, 255 Ala. 471, 52 So.2d 200. They were plead to a complaint which at the time they were filed contained two counts (8 and 9) charging wantonness. The judgment of the court on the pleading is as follows: "Demurrer of defendants are sustained to counts 3, 4 and 6. The defendants file their pleas Nos. 1 to 10, inclusive, and the plaintiff files demurrer to pleas and said demurrers are sustained as to pleas 2, 3, 4, 7, 8, 9 and 10. Plaintiff withdraws counts Nos. 7, 8 and 9. Issue being joined, as shown by the pleadings, thereupon came a jury," etc.

Appellee argues that the facts set out in plea 7 do not show that Cunningham owed appellee, his master or principal, any duty while he assisted in moving the furnace. But it is well settled that a servant does owe his master a duty not to injure him negligently and is personally liable for so doing. Whiddon v. Malone, 220 Ala. 220, 223(4), 124 So. 516; Mobile & M. R. Co. v. Clanton, 59 Ala. 392; Darman v. Zilch;

56 R.I. 413, 186 A. 21, 110 A.L.R. 826, annotation at page 832(a); 35 Am.Jur. 530, section 101.

Plea No. 7, as answer to a simple negligence count, is not subject to the demurrer interposed to it. Johnson v. Battles, 255 Ala. 624(14), 52 So.2d 702; Brown v. Southeastern Greyhound Lines, 255 Ala. 308(4), 51 So.2d 524; 65 Corpus Juris 804, 805.

Although we see no defect in plea 7 which would justify a judgment sustaining the demurrer as an answer to the simple negligence count, there is in the record no such judgment. We have copied supra what is supposed to be the judgment sustaining that demurrer. It is' not such a judgment as will sustain an appeal or an assignment of error. Watkins v. Goggans, 242 Ala. 222, 5 So.2d 472; Wilbanks v. Mitchell, 239 Ala. 167, 194 So. 513; Cooper v. Owen, 230 Ala. 316, 161 So. 98; Skidmore v. H. C. Whitmer Co., 221 Ala. 561, 130 So. 194; McDonald v. Alabama-Midland R. Co., 123 Ala. 227, 26 So. 165.

We predicate our conclusion as to assignment No. 12 on that status in respect to the judgment. We would not say that there was no evidence from which negligence of Cunningham could not have been found by the jury on the same reasoning that they found the driver of the truck negligent.

### Assignment No. 13.

This assignment relates to plea 8. It was the same as plea 7, except that the name of Cunningham was eliminated as plaintiff's servant, leaving the negligent servant unnamed. The same comment applies to this assignment as to assignment 12.

### Assignment No. 18.

■ The plaintiff claimed as an element of damages that he was rendered unable to work and earn money and was permanently disabled to work and earn money, and over the objection of defendant was allowed to testify that for twelve months prior to his injury here involved he had earned $4500.00 net; and that for the year following the injury he had earned $3200.00 net. Besides the general grounds of objection there was also included that it was speculative.

In a tort action for damages for the loss of earning capacity, such evidence is admissible. Birmingham Electric Co. v. Cochran, 242 Ala. 673, (9), 8 So.2d 171; Strickland v. Davis, 221 Ala. 247, 128 So. 233; Bankers Mortgage Bond Co. v. Sproull, 220 Ala. 245, 124 So. 907; Alabama G. S. R. R. Co. v. Frazier, 93 Ala. 45, 9 So. 303.

A different rule applies in an action of assumpsit for damages for the breach of a contract. Perfection Mattress & Spring Co. v. Dupree, 216 Ala. 303, (13), 113 So. 74; Beck v. West, 87 Ala. 213, 6 So. 70; Sherrill v. Alabama Appliance Co., 240 Ala. 46, (13), 197 So. 1.

### Assignment No. 19.

■ Appellants here complain that the court overruled their motion for a mistrial on account of the following statements made by the attorney for plaintiff in his closing argument to the jury:

"I want to read from section 301 (16) of the Motor Vehicle Act. I'll read from the Motor Vehicle Act which requires people who go into the business of operating a motor carrier to give bond * * * (reads)

" 'Security for the Protection of the Public.—No certificate or permit shall be issued to a motor carrier or remain in force, and no motor carrier subject to the provisions of this article shall engage in any operation on any highway of this state, unless such carrier complies with such reasonable rules and regulations as the commission shall prescribe governing the filing and approval of surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, in such reasonable amounts as the commission may require, conditioned to pay, within the amount of such surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, any final judgment recovered against such motor carrier for bodily injuries to or the death of

any person resulting from the negligent operation, maintenance, or use of motor vehicles under certificate or permit, or for loss or damage to property of others. The commission shall  *  *' ".

Defendants' attorney, Mr. Haley, made objection and made a motion for a mistrial on account of such argument. That objection and motion, Mr. Wilkinson's further remarks and the court's ruling are shown as follows:

"By Mr. Haley: Object, that has nothing to do with the unloading of freight. That refers to motor vehicles transporting * * *

"By Mr. Wilkinson: Well, you gentlemen give us a verdict in this case and we'll attend to the bond and insurance.

"By Mr. Haley: Your Honor, we object. The effect of that remark is ineradicable and cannot be erased from the minds of the jury and we ask for a mistrial. That is prejudicial argument.

"By the court: Gentlemen, don't consider that any judgment taken will be taken care of by bond or insurance.

"By Mr. Haley: We object to the court's statement as probably lending weight to the statement of counsel."

We think this status is ruled by our case of Birmingham Electric Co. v. Carver, supra.

The above quoted statement by counsel for appellants was in answer to various remarks by counsel for appellee, which we will not here rehearse. They have been carefully considered. But as said in the Carver case, supra, it is not alone a question of whether the remark quoted was not justified for it was excluded by the court and the jury admonished not to consider it. But the question is whether the remark improperly brought into the case the question of insurance in such manner that it could not be eradicated. We think it does not.

As to assignment of error No. 20, we cannot agree that the court erred in overruling the motion for a new trial.

The foregoing opinion was prepared by Foster, Supernumerary Judge of this Court while serving on it at the request of the Chief Justice, under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

It follows that the judgment of the trial court should be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.