BLACK, RESPONDENT, *v.* NORTHERN PACIFIC RAILWAY CO., APPELLANT.

(No. 5,087.)

(Submitted March 7, 1923.   Decided March 26, 1923.)

[214 Pac. 82.]

*Personal Injuries—Master and Servant—Workmen's Compensation Act—Provisions Exclusive.*

Personal Injuries—Master and Servant—Workmen's Compensation—When Injury Sustained at "Plant" of Employer.

1. *Held,* that where a railroad company delivered empty cars and transported loaded ones over a spur-track constructed to a point near a coal mine, and the portion of the track where the coal company placed loaded cars was indispensable to the conduct of its business, and one of the latter company's employees was injured while attempting to set a defective brake on a loaded car which he was moving in the course of his employment, the injury occurred at the "plant" of his employer, within the Workmen's Compensation Act, entitling him to compensation under that Act.

Same—Workmen's Compensation Act—Provisions Exclusive—When Action Against Third Party not Maintainable.

2. Where a coal mining company and its employees had elected to operate under Plan 3 of the Workmen's Compensation Act, and plaintiff employee received injuries in the course of his employment at the company's plant because of a defective brake on a car furnished his employer by defendant railroad company, the remedy afforded him by the provisions of the Compensation Act was exclusive, depriving him of the right to maintain action for damages against the railroad company for its negligent failure to have the car equipped with a reasonably safe appliance.

---

2. Rights and remedies under compensation acts where injuries were caused by negligence of third person, see notes in Ann. Cas. 1915D, 156; L. R. A. 1916A, 360; L. R. A. 1917D, 98; L. R. A. 1918F, 524.

*Appeal from District Court, Yellowstone County; Robert C. Stong, Judge.*

ACTION by Harry Black against the Northern Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Reversed, and cause remanded with directions to dismiss the complaint.

*Messrs. Johnston, Coleman & Johnston* and *Messrs. Gunn, Rasch & Hall,* for Appellant, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

The plaintiff was injured at the plant of his employer, and therefore, could not elect to sue the defendant. (*Ross* v. *Erickson Construction Co.,* 89 Wash. 634, 155 Pac. 153; *Stertz* v. *Industrial Ins. Com.,* 91 Wash. 588, 158 Pac. 256; *Carlson* v. *Mock,* 102 Wash. 557, 173 Pac. 637; also, 104 Wash. 691, 176 Pac. 2, on rehearing; *Zenor* v. *Spokane & I. E. R. Co.,* 109 Wash. 471, 186 Pac. 849; *Anderson* v. *Bauer,* 117 Wash. 70, 200 Pac. 576; see, also, *Spaulding* v. *W. N. Flynt Granite Co.,* 159 Mass. 587, 34 N. E. 1134; *Wiley* v. *Solvay Process Co.,* 215 N. Y. 584, 109 N. E. 606; *Lipstein* v. *Provident Loan Society,* 139 N. Y. Supp. 799; *Carter* v. *Clark,* 78 Law Times Rep. 76; *McCallion* v. *Missouri Pac. Ry. Co.,* 74 Kan. 785, 88 Pac. 50; *Sack* v. *Dolese,* 137 Ill. 643, 27 N. E. 62; Labatt's Master and Servant, sec. 1074.)

*Messrs. Pierson & Smith,* for Respondent, submitted a brief; *Mr. George W. Pierson* argued the cause orally.

By the title of the Montana statute "providing a schedule of compensation for injury or death of workmen and methods of paying the same, and prescribing the liability of employers who do not elect to pay such compensation," the only thought conveyed is to provide compensation as between employer and employee. There is not a suggestion of affecting the relations of the employee as to third persons.

The first section of the Act relating to the liability or compensation feature, prescribes a rule of liability in actions

brought by employees in contrast to section one of the Washington Act, abolishing all actions of law. (Sec. 3 (a), Rev. Codes, 2836.) There is a noted omission from this subdivision, *i. e.*, injuries traceable to third persons otherwise the right of compensation against the employer is as broad as the claim of the employee under the direct payment plan. But the right of the employee against anyone but his employer is left untouched.

Section 3 (c) provides ''any employer who elects to pay compensation as provided in this Act shall not be subject to the provisions of sections 3 (a) nor shall such employer be subject to any other liability whatsoever,'' further abolishing the cause of action, except as preserved by the Act, providing for the preservation of the cause of action of the employee, who has elected not to come under the Act. It is plain that the language of this section is to the effect that no person is exempt from the action arising from his negligence unless he is an employer who has elected to pay the compensation. And under section 17 (e) any railroad engaged in interstate commerce cannot elect to come under the Act, except as to construction work.

While the question is not directly involved here, under our law there is no general or common exemption from negligence between employers and employees under the Act, as employers under two of the plans may be exempted from suit without contributing anything to the state compensation fund. Our law is merely a determination of the rights of an employee against his employer, and these are the terms used throughout the Act.

That the matter of recovery of damages is restricted to the question arising between the employee and his employer is again asserted in section 3 (d), Rev. Codes, sec. 2839 ''Where both the employer and employee have elected to come under this Act, the provisions of this Act shall be exclusive and such election shall be held to be a surrender by such employer and such employee of their right to any other

method.'' The operation under the law is one of contract.
(*Southern Surety Co.* v. *Chicago St. P. Ry. Co.*, 187 Iowa,
357, 174 N. W. 329; *City of Austin* v. *Johnston* (Tex. Civ.),
204 S. W. 1181; *Nashville C. Ry.* v. *Miller*, 120 Ga. 453, 67
L. R. A. 87, 49 S. E. 959; *Jocowicz* v. *Delaware L. & W.
Ry.*, 87 N. J. L. 273, 92 Atl. 946.)

Where the operation of the law depends upon election and
particularly of both parties to the controversy, it would cer-
tainly be doing violence to both the language and spirit of
such law to hold that either the liability or exemption of ap-
pellant depends upon the election of a third party.

Referring to sections 3 (k), Revised Codes 2846: The right
of action of an employee is preserved even against his em-
ployer who has not elected to come under one of the compen-
sation plans, notwithstanding the employee has made his elec-
tion. If the election of an employee does not bar his cause
of action against his employer, who has not elected, certainly
the election of the employee does not bar his cause of action
against one with whom he sustains no contractual relations,
and particularly one to whom the law says the act does not
apply and cannot elect.

Under the Washington law the matter of election, or the
question of employer or employee, does not enter into the
situation. There if the person designated in the statute is
injured at the situs defined, his claim arises without election
on his part or any other person, with one exception, and
his cause of action against all persons whomsoever is taken
away.

That the operation of the Montana Act is one of election
again appears in section 3 (i). From the election of both, an
agreement is effected whereby the one agrees to pay and the
other agrees not to sue the employer. The only parties to the
contract are the employer and his employee. The law pro-
vides summary methods for enforcement.

Under the plain provisions of the law, if the employer
does not elect the employee's right of action against the em-

ployer is not affected, other than as to defense and the election of the employer is certainly for himself and not for the benefit of another. The thing on the part of the employer being purely a matter of election, it is presumed he will not so elect unless he deems it to be to his direct advantage.

By section 6 (j), the legislature did not prescribe when a cause of action does or does not exist, but only defines the obligation of the claimant to those who might be liable for the compensation under the Act. Statutes should be their own interpreter. (*Smith* v. *Iron Mountain Tunnel Co.*, 46 Mont. 13, Ann. Cas. 1914B, 551, 125 Pac. 645; *Cruse* v. *Fischel*, 55 Mont. 258, 175 Pac. 878.)

By section 24 (a) of the Act, it is provided, ''Whenever this Act, or any part or section thereof, is interpreted by a court, it shall be liberally construed by such court,'' but such legislative direction does not warrant the court in inserting that which has been omitted. ''Under the doctrine of *expressio unius est exclusio alterius,* a statute prescribing a new right and a particular remedy must be strictly construed and followed.'' (*Page* v. *New York Realty Co.*, 59 Mont. 305, 196 Pac. 871.) In the case of *Wiggins* v. *Industrial Accident Board,* 54 Mont. 335, 170 Pac. 9, attention was called to *Stertz* v. *Industrial Ins. Com.,* 91 Wash. 588, 158 Pac. 256, but the court refused to follow the Washington case. In the Washington case the court said none of the states pushed their schemes of compensation so far.

''A provision that the liability prescribed by the compensation act shall be exclusive is construed to apply only to actions against the employer, and does not prevent an injured employee from maintaining a common-law action against third persons causing the injury.'' (*Smale* v. *Wrought Washer Mfg. Co.,* 160 Wis. 331, 151 N. W. 803; *Hade* v. *Simmons,* 132 Minn. 344, 157 N. W. 506; *City of Austin* v. *Johnston* (Tex. Civ.), 204 S. W. 1181.)

. Respondent Black made no claim for and has not received any compensation. The cause of action exists in him and

unless he recovers, appellant cannot be compelled to respond for its fault, neither can respondent recover compensation from any source.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1920 the Equity Coal Company was operating a coal mine near Fromberg, in this state, under lease from J. C. McCarthy, the owner. In order to make the product of the mine available for market, a spur-track had been constructed from a point near Fromberg, on the Northern Pacific Laurel-Bridger main line, to a point near the mine, and on this spur-track a tipple had been erected in such manner that coal from the mine could be loaded directly into cars for transportation. The spur-track was constructed principally by McCarthy, though the rails and a small part of the labor were furnished by the Northern Pacific Railway Company, which delivered empty cars to the coal company and transported the loaded cars from the property. This spur-track extended beyond and to the west of the tipple a distance sufficient to permit several empty cars to be set out at one time for use as needed. When empty cars were thus set out, they were held in place by the hand brakes. When a car was needed, the brakes would be released, the car moved to the tipple by gravity, the brakes set, the car loaded, the brakes released and the car moved to the east a distance sufficient to permit other cars to be loaded. The brakes would then be set, and the loaded car would thereafter be removed by the railway company. From the time empty cars were set out west of the tipple until the loaded cars were removed from the point east of the tipple the railway company had nothing whatever to do with their movements. The coal company took possession of these empty cars, moved them successively to the tipple, loaded them, moved them to the east, and spotted them with the brakes set to await transportation by the railway company.

In November, 1920, the railway company delivered an empty car to the coal company on the track west of the tipple. On November 19, 1920, the car was to be used, and to that end this plaintiff, employed by the coal company, in the usual course of his employment released the brakes on the car, caused it to be moved to the tipple where it was loaded, and then removed it out of the way a short distance to the east. When the car reached the proper place to be left for transportation, plaintiff undertook to set the hand brakes, but in the operation a brake chain broke, and plaintiff was thrown from the car and his leg broken. He brought this action against the railway company to recover damages, alleging negligence on the part of the railway company in failing to have the car properly equipped with a reasonably safe brake chain.

In its answer the railway company denied any negligence on its part and pleaded affirmatively that the coal company and plaintiff were operating under plan 3 of our Workmen's Compensation Act; that plaintiff was injured while engaged in the performance of his duties as an employee of the coal company and at the coal company's plant.

In the reply it is admitted that plaintiff was employed by the coal company, and that he and the coal company were operating under plan 3 of the Workmen's Compensation Act. It is alleged that plaintiff was injured in the vicinity of the coal company's plant, but on the line of the railway company's road and while handling one of its cars. The trial of the cause resulted in a verdict for plaintiff. A new trial was denied, and defendant appealed from the judgment.

It is admitted by the pleadings that plaintiff was injured [1, 2] while engaged in the performance of his duties as an employee of the coal company and there is not any conflict in the evidence so far as it reflects upon the single question of fact involved in this appeal, namely: Was plaintiff injured upon the premises or at the plant of his employer?

Plaintiff testified: "There were no industries beyond the Equity Coal Company on this particular track. In other words, that was the only industry on this particular spur track at that time. From the time this track left the old Gebo branch, it was the only industry on this branch from where it left the Gebo branch up to the Equity Coal Company. It was constructed up there to enable the Equity Coal Company to carry on its mining operations."

Senator McCarthy testified: "After it was constructed the track was used entirely by me while I was at the mine. * * * After it was constructed there it was used by me, and afterwards I leased the mine to the Equity Coal Company, and they used it for the same purpose. I know who had access to the spur-track and the use and control of it at the mine. It was the operators of the mine. I think there was a clause in the contract with the railway company whereby the railway company reserves the right to have other work done there, provided it does not interfere with our operations. * * * The Northern Pacific did all the repairs on the track, as far as I know."

A witness, Yochum, testified that some cars had been loaded on this spur-track from a small mine operated by Parrott and Doles, but that the loading of these cars did not interfere with the operations of the Equity Coal Company.

It is entirely beside the question that the railway company kept the spur-track in repair or that Parrott and Doles loaded cars on that track. The meaning of the phrase "at the plant of the employer" is not left in doubt. Section 6jj of our Compensation Act (sec. 2889, Rev. Codes 1921) declares: " 'The plant of the employer' shall include the place of business of a third person while the employer has access to or control over such place of business for the purpose of carrying on his usual trade, business, or occupation." The evidence discloses that the Equity Coal Company not only had access to that part of the spur-track where it placed its loaded cars, but that access to and use of such portion of the

66 Mont.—35

track were indispensable to the conduct of its business. The conclusion cannot be avoided that this accident occurred at the plant of plaintiff's employer and, since the injury arose out of and in the course of his employment, plaintiff was entitled to receive compensation under the Compensation Act (sec. 2911, Rev. Codes 1921.)

After the record and briefs in this case were filed, this court decided *Bruce* v. *McAdoo,* 65 Mont. 275, 211 Pac. 772. The facts in that case cannot be distinguished from the facts of the instant case. We there held that the provisions of our statute for compensating an injured workman subject to the law are exclusive when the injuries are received at the plant of the employer.

Counsel for plaintiff earnestly urge a reconsideration of the question involved in the *Bruce Case,* upon the theory that that case was decided upon the authority of decided cases which arose under the Washington Compensation Act (Laws 1911, p. 345), and that our statute differs from the Washington Act to such an extent as to require a construction entirely different from that placed upon the Washington statute. In deciding the *Bruce Case* reference was made to decided cases arising under the Washington statute, and reliance was had upon the reasoning of those cases, but it is not true that, so far as applicable to a case of this character, there is any substantial difference between the Washington statute and our own. The Washington Act has been characterized as an "industrial insurance statute," while our Act is usually referred to as a compensation statute. Whatever difference there is between the statutes, however, is one of form rather than substance, a difference in the method of administration, but not in matters which relate to the fundamental structure of the respective Acts. Our statute provides three distinct plans of administrative procedure:

(1) Under plan 1 an employer in any of the hazardous occupations enumerated, who can satisfy the administrative board of his financial ability to meet his obligations under

the Act, may be authorized to make payments directly to his employees as they may become entitled to the same.

(2) Under plan 2 the employer insures his liability by a policy or policies of insurance, and when an accident occurs in his business a deposit is made with the treasurer of the board sufficient to meet the statutory demands.

(3)· Every employer operating under plan 3 contributes to a common fund a sum which is computed upon his pay-roll and graduated according to the risk of his business, and from this common fund compensation is made to injured employees as the occasion therefor arises.

The Washington statute provides only one plan of operation, and in every essential particular it is not distinguishable from our plan 3 above, so that a construction of the Washington Act is peculiarly applicable to our Act whenever the controversy involves a workman operating under plan 3. The Washington statute is compulsory, while ours is elective, but whenever the employer and employee have come under our Act the rights and liabilities are not materially different from those enforced upon the employer and employee by the Washington statute.

But it is contended that the Washington Act contains provisions which necessarily deny to a workman, injured at the plant of his employer through the negligence of a third person, the right to maintain an action at law for damages against such third person, and that our statute does not contain like provisions. But again the difference is one of form rather than substance; a difference in phraseology rather than a difference in meaning. The provision in section 3 of the Washington Act which defines the term "workman" and designates the circumstances under which the injured employee may elect to sue the third party whose negligence occasions the injury "away from the plant of his employer" is substantially the same as the provision in section 6j of our Act (sec. 2863, Rev. Codes 1921). Particular emphasis is laid upon provisions in sections 1 and 5 of the Washington

Act, but the reference to section 1 is unfortunate.  Counsel call attention to the language employed by the supreme court of Washington in *Peet* v. *Mills*, 76 Wash. 437, Ann. Cas. 1915D, 154, L. R. A. 1916A, 358, 136 Pac. 685, to the effect that in enacting the statute the legislature declared its purpose to withdraw all phases of the premises from private controversy and abolish all civil actions for personal injuries. The reference comprehends only a part of the language of the court, and the court itself referred to section 1 only in general terms.  Section 1, which declares the policy of the state of Washington, provides: "The common-law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern industrial conditions.  In practice it proves to be economically unwise and unfair.  Its administration has produced the result that little of the cost of the employer has reached the workman, and that little only at large expense to the public.  The remedy of the workman has been uncertain, slow and inadequate.  Injuries in such works, formerly occasional, have become frequent and inevitable.  The welfare of the state depends upon its industries, and even more upon the welfare of its wageworker.  The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy."  The expression "the premises" relates to the common-law remedy of workmen against employers for injuries, not the remedy of employees against third parties. Section 5 of the Washington Act provides for payment of compensation to the injured workman, and then declares: "And, except as in this Act otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever."  Our Act does not contain the same declaration of public policy as is found in section 1 of the Washington Act, but this court has declared that the considerations which prompted our legislature to enact our statute were the same as those declared by the

Washington legislature itself. (*Lewis and Clark County* v. *Industrial Accident Board,* 52 Mont. 6, L. R. A. 1916D, 628, 155 Pac. 268; *Page* v. *New York Realty Co.,* 59 Mont. 305, 196 Pac. 871.)

We have then for consideration the question: Does our Act contain a provision equivalent to that found in section 5 of the Washington statute? Section 3 of our Act (sec. 2839, Rev. Codes 1921) provides: ''Where both the employer and employee have elected to come under this Act, the provisions of this Act shall be exclusive, and such election shall be held to be a surrender by such employer and such employee of their rights to any other method, form, or kind of compensation, or determination thereof, or to any other compensation, or kind of determination thereof, or cause of action, action at law, suit in equity, or statutory or common-law right or remedy, or proceeding whatever, for or on account of any personal injury to or death of such employee, except as such rights may be hereinafter specifically granted.''

It is difficult to conceive of language more comprehensive. If the employer and employee come under the Act, the provisions of the Act are exclusive. The single exception noted applies only where the injury occurs away from the plant of the employer (sec. 2863, above). By coming under the Act, the employee surrenders the right to any other method of obtaining redress for his injuries received at the plant of his employer, and since this plaintiff and his employer, the Equity Coal Company, were operating under our Act, and plaintiff's injuries were received at the plant of his employer, it follows that he was bound to seek redress under the Compensation Act, and may not maintain this action. It would be idle to reiterate the reasons which compel this conclusion. They are stated concisely in the opinion in the *Bruce Case,* and from the logic of that decision we think there cannot be an escape.

The judgment is reversed, and the cause is remanded, with directions to dismiss the complaint.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.