## PAUL A. TRAUTMAN *v.* WARFIELD & ROHR COMPANY.

*Master and Servant—Scope of Employment—Chauffeur Testing Truck.*

A chauffeur employed by the owner of a truck, who, after having taken the truck to a repair shop for repairs, undertook, at the request of the shop foreman, in order to test the repairs, to drive the truck around the block, accompanied by the foreman, was not, while so doing, acting within the scope of his employment, so as to render the owner liable for his negligence.

*Decided November 11th, 1926.*

Appeal from the Superior Court of Baltimore City (STEIN, J.).

Action by Paul A. Trautman, for himself and to the use of the Aetna Life Insurance Company and the White Motor Company, against the Warfield & Rohr Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*William D. Macmillan* and *Guy B. Brown,* with whom was *Harold Tschudi* on the brief, for the appellant.

*Walter L. Clark* and *Walter V. Harrison,* with whom was *Charles G. Page* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The question on the facts of this appeal is, Was the owner's chauffeur acting within the scope of his employment while driving, at the request of the repairman's shop foreman, the motor truck of the owner around a city block for the purpose

of enabling the foreman to test if certain repairs and adjustments, which had been made at the request of the owner, had put the truck in good running condition and ready for delivery to the owner's chauffeur? While this trial was in progress, an accident happened and the foreman, Paul A. Trautman, was injured. The injuries sustained by Trautman were serious, and for them he was awarded compensation against his employer, the White Motor Company, and its insurance carrier, the Aetna Life Insurance Company. Then the foreman, for himself and to the use of the Aetna Life Insurance Company, brought an action in tort against the appellee, the Warfield & Rohr Company, the owner of the motor truck, on the theory that the negligence of the driver of the motor truck, while in the course of his employment by the appellee, caused the injuries of which the appellant, Trautman, complained.

There is no dispute that the relation of master and servant existed between the owner and the driver of the truck, and the record shows that there was legally sufficient evidence tending to prove that the negligence of the driver of the truck was the proximate cause of the injuries sustained by the appellant, Trautman, and, therefore, under the circumstances, a recovery against the owner of the truck could be had in the action brought at *nisi prius* pursuant to the terms of the Workmen's Compensation Act (Code, art. 101, sec. 58), if the servant was acting, at the time of the accident, for his employer and within the scope of his employment. The controlling facts are undisputed and the learned lower court held them insufficient to establish the necessary condition for a recovery.

The appellee had sent his motor truck to the White Motor Company, one of the appellants, to have its radiator repaired and its foot brakes and carbureter adjusted. The driver called for the truck about five o'clock in the afternoon of February 4th, but the job was not done as promised, and the driver was told he would have either to wait for the truck until it was repaired by the night shift, or to return for it the following morning. Because the driver was to use the truck that evening, he waited, and the repaired radiator was

put in its place on the truck and the brakes and carbureter were adjusted by a shop workman under the supervision of the appellant, Paul A. Trautman, who was in charge as the night foreman of the repair shop. After the work was done, the truck was raised by a jack, tested in that position by the appellant, who, at first, thought this test sufficient to show the truck ready for delivery to the driver, who mounted the truck to drive it away. The appellant opened the door through which the truck was to go. The truck went out and then the foreman concluded that the truck should be driven around the city block in which the garage was located, in order for the foreman to see if everything was in good running condition. Accordingly the appellant told the driver to run the truck from the garage around the block and back to the garage. He got on the right running board, where he stood in order to avoid the noise of the cab, so that he could hear better if the motor was running without missing, as there had been trouble with the carbureter. In addition to listening to the sound of the motor, the appellant directed the driver to check and stop the truck in a test to find if the brakes were properly operating. The trial of the brakes was satisfactory, but, as they were returning to the garage, the accident occurred that stopped any further observation by the foreman.

These uncontroverted facts establish that the motor truck had been left at the shop of the White Motor Company to be put in condition for operation, and that the servant of the appellee was employed to drive the truck and was waiting to take the truck out when its radiator had been repaired and put in position, and its brakes and carbureter had been adjusted. While this work was being done, and during the testing to ascertain if the work had been properly done, the motor truck was in the possession and under the control of the servants of the White Motor Company, and the driver of the truck was not at all employed by his master to make the repairs or adjustments nor to assist in the test of the work done. These were the things which the owner of the truck had engaged the services of the motor company to do, by

reason of its possessing the expert's special skill and knowl-
edge required to do, and to test, the agreed work of repair
in an adequate and satisfactory manner.  And these were the
things the motor company did.  It finished the work; and in
order to find if the truck was ready for delivery to the driver,
the motor company raised the truck by jacks and tested the
operation of the brakes and of the carbureter.  After con-
ducting this test, which was satisfactory, the driver mounted
the cab of the truck and drove it out of the shop into the
street, where he was stopped by the appellant, Trautman,
the foreman of the motor company in charge of the work.
Trautman had conducted the test inside the shop, and he
halted the driver of the truck, because he had decided that a
further or second test of the work on the truck should be
made before the driver would be allowed to leave with the
truck.  This action of Trautman was in the performance of
duties pursuant to his employment by the motor company;
and it was upon Trautman's sole initiative, and the driver
neither requested nor suggested that any further test be made.
The effect of Trautman's decision, that a second or further
test was necessary before the truck could be surrendered to
the control of the driver, was to restore full possession and
dominion of the truck to the motor company, since it made
the delivery of the truck to its owner depend upon the result
of a second or further test to be given and conducted by the
foreman as the servant of the motor company.  The time,
the place, the method, and conduct of the tests, to learn if
the brakes and carbureter were functioning so as to make the
truck ready for delivery, were all determined and controlled
by the repairman.  The foreman himself had directed his
workman to operate the truck in the shop during the first test,
and he could have either driven the truck on the road in the
second test, or have secured the services of one of his work-
men as a driver.  By no reasonable implication was it within
the scope of the chauffeur's employment to assist at either
the first or second test.  Both tests were alike in having been
made in connection with the repairman's work on the truck,
and were for the benefit of the repairman.  If the foreman

or one of his subordinates had been driving the truck in the second test, he would have been employed in the service of the repairman.  Should a third party or the waiting driver of the truck's owner be requested by the foreman, and voluntarily assume, to drive the truck during the contemplated efficiency test, the third party or driver, while so engaged, would not be the servant of the owner of the truck, because the act done does not bear any natural, connected, and ordinary relation to the employment of a mere chauffeur, awaiting the completion of the work on a motor truck, undergoing repairs at a garage.

In the instant case, the action of the chauffeur in associating himself with the foreman in the second test was for the benefit of the repairman, and, being done without the knowledge or the express or implied authority of the owner of the truck, was outside of the scope of the chauffeur's employment, and so the chauffeur, either as a volunteer or as a servant, depending upon the extent of the authority committed to the foreman by the repairman, was temporarily working for the repairman.  While so engaged the chauffeur had stepped outside the scope of his employment by the truck's owner, and so the relation of master and servant between the driver and the owner of the truck was suspended. The negligence of the chauffeur in driving the truck during the period of this suspension was not connected with the business of the truck owner, and he was not liable under these circumstances for the negligence of the chauffeur.  As this conclusion is drawn from all the facts, which are consistent and uncontradicted, the lower court was right in taking the case from the jury, and the judgment must be affirmed.  *Jordan Stabler Co. v. Tankersly,* 146 Md. 454, 460, 461; *Salowitch v. Kres,* 147 Md. 23, 30-33; *Butt v. Smith,* 148 Md. 340, 343; *Hooper v. Brawner,* 148 Md. 417, 431; *Amer. Sugar Refining Co. v. Gilbert,* 145 Md. 251, 255; *Sherwood v. Warner,* 27 App. D. C. 64.

*Judgment affirmed, with costs.*