327 P.2d 369

**J. Russell CLOUGHLEY, Plaintiff-Respondent,**

v.

**ORANGE TRANSPORTATION CO., a corporation, and Keith Park, Defendants-Appellants.**

No. 8573.

Supreme Court of Idaho.

July 2, 1958.

Rehearing Denied July 29, 1958.

Merrill & Merrill, Pocatello, for appellants.

Holden, Holden & Kidwell, Idaho Falls, for respondent.

TAYLOR, Justice.

September 2, 1954, plaintiff (respondent) was an employee of Detweiler, Inc., contractor for certain construction work at the Atomic Energy Commission's National Reactor Testing Station in Jefferson County, west of Idaho Falls. Vernon C. Pearcy was the mechanical superintendent of Detweiler, Inc., at the job site. Keith Park, defendant (appellant), was regularly employed as a truck driver by Orange Transportation Co., defendant (appellant).

Detweiler, Inc., c/o Arrington Construction Co., was consignee of a shipment of two boilers, each weighing approximately 13,500 pounds, crated. The shipper routed the shipment, prepaid, f. o. b. job site, by way of Consolidated Freightways to Idaho Falls and then by way of Orange Transportation Co. to the job site. The shipment was delivered to the job site September 2, 1954, by defendant Park as driver of an Autocar diesel tractor belonging to defendant Orange Transportation Co., pulling the Consolidated Freightways' semi-trailer, upon which the boilers were loaded. The tractor and trailer are referred to as the "truck".

When Park arrived at the job site he presented the motor freight bill of Orange Transportation Co. to Mr. Pearcy, who signed it, acknowledging receipt of the boilers and parts. Pearcy then told Park where to place the trailer, stating he had made arrangements for a crane to unload the boilers and that the crane would arrive in about thirty minutes. When the crane arrived it was placed in position on the right hand side of the trailer, opposite the rear boiler. Pearcy directed plaintiff to go up on top of the boiler and connect cables attached to the boiler to the hook on the crane, and to remain on top of the boiler or trailer to watch the operation from that point. It was arranged between Park and Mr. Pearcy that Park would operate the truck during the unloading, the plan being to raise the boiler by means of the crane, then drive the truck from under the boiler and lower it to the ground. Pearcy advised Park that he would station himself near the rear of the

truck and by means of signals, which Park was to observe through his rearview mirror, indicate to Park when to move forward and when to stop. When the rear boiler was raised, Pearcy signalled Park to move the truck, which Park did. The boiler became wedged in the trailer and as the truck moved forward—five to twelve feet, according to different witnesses—it flexed the boom of the crane laterally in the direction of the movement. Under this stress the boom collapsed and fell across the top of the boilers and trailer at an angle such that the tip of the boom extended beyond the front end of the trailer. Plaintiff had taken a position at the front of the trailer and as the boom collapsed he jumped to the ground to avoid being struck by the falling boom.

Plaintiff brought this action to recover damages for injuries he suffered as a result of the jump. The right of action is based upon the alleged negligence of Park, acting as agent and servant of the Orange Transportation Co., in failing to halt the forward motion of the truck upon the signal of Pearcy so to do.

As an employee of Detweiler, Inc., plaintiff was entitled to, and was paid, benefits under the Workmen's Compensation Law. I.C. § 72–101 et seq. Defendants contend that, while driving the truck to assist in the unloading, Park was a loaned servant and employee of Detweiler, Inc., and that workmen's compensation is plaintiff's sole and exclusive remedy. This is the controlling question presented.

In his original complaint, verified by himself, plaintiff alleges:

"That said Vernon C. Pearcy was stationed at the left rear of said truck-trailer and said defendant, Orange Transportation Company, by and through its agent and employee, Keith Parks, the driver of said truck-trailer was directed and instructed by Detweiler, Inc., to maintain a look-out through the rear-vision mirror located on the left side of said truck for stop and go hand signals, to be given by said Vernon C. Pearcy after said crane had lifted said boiler".

After a general demurrer was sustained to the original complaint, plaintiff filed an amended complaint, alleging:

"* * * in order for defendants to deliver said boilers it was necessary for the defendants to utilize a crane, and they did utilize a crane, to raise said boilers one at a time a few inches above the bed of said truck-trailer to permit the said defendant, Keith Parks, to drive said truck-trailer out from under said boiler so raised as aforesaid, thus permitting said crane to lower said boiler to the ground.

"That the said Vernon C. Pearcy was instructed by the said defendant, Keith

Parks, to station himself at the left rear of said truck-trailer to signal the said defendant, Keith Parks, during the unloading operation; * * *."

In their answer, defendants allege:

"That in order to unload said boilers, the said Detweiler, Inc., a corporation, through its agent, Vernon C. Pearcy, engaged the services of Keith Park and requested that he drive said truck-trailer from under the boilers as they were lifted therefrom, and gave instructions to the said Keith Park as to how to carry out this objective, and the said Keith Park thereupon became and continued to be the agent of Detweiler, Inc., a corporation, when the said accident occurred, and that at said time he was not the servant, agent or employee of Orange Transportation Company, * *."

We have held that an admission made in a pleading is binding on the party making it. Smiley v. Smiley, 46 Idaho 588, 269 P. 589; Weed v. Idaho Copper Co., 51 Idaho 737, 10 P.2d 613; Peterson v. Universal Automobile Ins. Co., 53 Idaho 11, 20 P.2d 1016. In those cases the admissions were made in pleadings upon which the causes were tried. The rule perhaps would not be applied to a superseded pleading. In any event, the superseded pleading is competent evidence against the party making the admission. The pertinent part of the original complaint was admitted in evidence.

The trial resulted in a verdict and judgment in favor of plaintiff, and defendants brought this appeal from the judgment and from the order denying their motions for new trial and for judgment notwithstanding the verdict.

The evidence shows that Mr. Pearcy, acting for Detweiler, Inc., rented the crane and its operator from Arrington Construction Co., and took charge of and directed the activities of those engaged in the unloading operation, including the defendant Park. The testimony of Mr. Pearcy, himself, is to this effect.

On direct examination, referring to a conversation with Park just prior to the attempted unloading:

"A. I think also Mr. Cloughley was present at this conversation. The conversation was to—in order to form some procedure to unload the boilers with, what we were intending to do and how we were going to do it.

"A. Yeah, we had a conservation with him—I had a conversation with him myself explaining to him as to how we was going to set the truck, where we was going to set the boilers— I mean to unload the boilers at the area itself. He had left the truck parked on the road when he come in, .

and I had—or he had asked me where we were going to unload these boilers, so I did designate the spot where we was going to unload these boilers.

"A. Mr. Hodges, the operator of this truck (sic) set up his crane—the operator of the crane, rather, put his outriggers on, and Mr. Cloughley, who was with me at the time, was instructed by me to rig the boiler with certain cables and equipment that we had to lift the boilers, and he did so."

"A. The only thing I told him I would stand by at the left, at the driver's side at the rear, and do the signalling myself.

"Q. Did he ask for any signalling? A. I just don't remember, sir, whether he did or not, but I am sure that I told him I would signal him through his rearview mirror.

"A. As I say before, Mr. Hodges had raised the boiler approximately six to eight inches off the floor of the truck, and I gave—I asked them, as I say, I asked Mr. Cloughley if he was ready, and also Mr. Hodges if he was ready, and they both said yes that they were, so I gave Mr. Parks the signal to pullahead, to pull out from underneath the boiler.

"A. The agreement he and I did have, that I would signal him to stop and start the truck, as I explained before in my testimony.

"Q. And did the agreement include what he was to do? A. He was to drive the truck, sir."

On cross-examination:

"Q. The facts are that he was to receive a signal by the arm from you? A. That's right, yes sir.

"Q. And when you gave it he started? A. Yes sir.

"Q. And he was to receive a signal by the arm—A. To stop. * * * I secured the boom from Mr. Arrington.

"Q. Arrington, I mean, the Arrington Construction Company? A. Yes sir.

"Q. For use by the Detweiler Company to lift these trucks—these boilers off the truck? A. That is right.

"Q. Yes. Then you directed Mr. Park to go ahead when you gave a signal, and to stop when you gave a signal, didn't you? A. That's right, sir.

"Q. Yes. And he did that at your request? A. He didn't stop quick enough, sir, at my request.

"Q. But he moved and went at your request, didn't he? A. He moved and went at my request, yes sir.

"Q. You were directing the affairs of the company at the time, of the Detweiler Company, weren't you, acting as their agent? A. I was acting as their agent, yes sir, * * * acting as their superintendent.

"Q. And you knew that it was Detweiler Company that was unloading the boilers, you knew that? A. Yes sir, I knew that.

"Q. Sure. And so you undertook under those circumstances to unload that boiler, didn't you? A. Yes sir.

\* \* \* \* \* \*

"Q. But, in helping the Detweiler Company unload this machinery he drove the truck, that's what you mean to say? A. That's right."

And referring to the cranes:

"Q. You hired it, hired the crane, didn't you? A. Yes sir, I engaged the crane myself."

On recross-examination, referring to the crane operator:

"A. He was the employee of the Arrington Construction Company, sir.

"Q. But hired by you people? A. We hired the crane, yes sir.

"Q. And the man who came over to operate it, of course? A. That's right, yes sir."

And referring to Park:

"Q. Didn't you give Mr. Parks the signal to pull ahead? A. Yes sir, but that's—

"Q. Well, yes, whatever signal it was. A. Yes.

"Q. And then you gave him the signal to stop? A. That is right."

On redirect:

"Q. Did you yourself do anything more than just signal? A. That's right. I checked the rigging on the boilers myself, sir."

John Westergard, local branch manager for defendant Orange Transportation Co., testified:

"A. The consignee in all cases, or the shipper on the pickup, handle the entire operation of loading or unloading any heavy object";

that Pearcy had by phone advised him that he, Pearcy, would have a crane ready to unload the boilers; that on Saturday, September 4th, after the accident, Pearcy asked him to have the tractor returned to the site to lift the boilers off the trailer; that "they had the heavier crane to unload it with."

On direct examination Mr. Westergard testified:

"A. In the National Motor Freight Classification, number thirteen, Rule

twenty-one definitely states that large items are to be unloaded, or loaded, by the consignee, or the consignor."

He further testified the rule applies to items of 500 pounds and up or of unusually great dimensions.

On cross-examination Mr. Westergard testified that Park was a skilled truck operator; that he was entrusted with the truck and was responsible for its safe operation; his wages were paid by Orange Transportation Co. and he was subject to discharge by Orange Transportation Co. at any time and for any reason; that Orange Transportation Co. was responsible for the return of the semi-trailer to Consolidated Freightways; that generally the driver of a truck is used in the unloading operation, and:

"A. At the request of the consignee or the shipper, a driver is used.

"Q. And then your company furnishes the driver under such circumstances? A. Yes.

"Q. And only under such circumstances? A. Yes.

"Q. If they don't request it, do they furnish the driver for the truck? A. That's right, they can do, and in some—

"Q. And your drivers have the right to turn this equipment to any other drivers? A. Yes, it has been done.

"Q. Without any authority from you? A. Right.

"Q. Or from your company? A. That's right."

Mr. Westergard further testified on cross-examination that the National Freight classifications, rules and regulations were adopted by the Carriers' Association with the approval of the Interstate Commerce Commission. Rule 21 of classification 13, as read to, and confirmed by, the witness is as follows:

"Q. 'Where an article or articles in a single container or shipping form tendered, weighs five hundred pounds or more, or if the greatest dimension exceeds eight feet, or the greatest intermediate dimension each exceeds four feet, loading or unloading shall be performed by the shipper or consignee, as the case may be. If requested, carrier will undertake, on behalf of the shipper or consignee, as the case may be, to employ additional help. No charge will be made for help performed by the truck driver, but a charge of one dollar and fifty cents per hour or fraction thereof, for each man furnished, other than the truck driver, shall apply from time vehicle arrives at place of pickup or delivery

until shipment is loaded or unloaded, as the case may be.' "

Further examination of the witness revealed that the rule read bore effective date of July 7, 1955, but that the same rule had been a part of all previous classifications. Asked if he had advised the Detweiler company of rule 21, the witness answered that he had not, and, explaining, said:

"I didn't feel it necessary, because we had had dozens of other shipments out to all construction companies, including these people, and I don't see it necessary to explain each time the circumstances, when they already know about it."

Keith Park testified that in both the attempted unloading on September 2nd, and the unloading on September 4th, he acted at the request of, and as directed by, Pearcy; that he would not have driven the truck in the unloading had not Mr. Pearcy told him to.

It is clear from the evidence that it was the duty of Detweiler, Inc., the consignee, to unload the boilers and that Detweiler, Inc., recognized that duty, and actually took charge of and performed the unloading operations. From this it follows that Park, in operating the truck during the attempted unloading on September 2nd, was the temporary, loaned employee of Detweiler, Inc. Therefore, Park was a co-employee or fellow-servant of plaintiff. Neither Park nor his general employer, Orange Transportation Co., were third parties against whom plaintiff could maintain a tort action for damages under § 72–204, I.C. Hiebert v. Howell, 59 Idaho 591, 85 P.2d 699, 120 A.L.R. 388; Brown v. Arrington Const. Co., 74 Idaho 338, 262 P.2d 789; Peet v. Mills, 76 Wash. 437, 136 P. 685, L.R.A.1916A, 358; Bruce v. McAdoo, 65 Mont. 275, 211 P. 772; Black v. Northern Pac. Ry. Co., 66 Mont. 538, 214 P. 82; Kowcun v. Bybee, 182 Or. 271, 186 P.2d 790; Koch v. Telluride Power Co., 116 Utah 237, 209 P.2d 241; Atkinson v. Fairview Dairy Farms, 190 Or. 1, 222 P.2d 732; Bresnahan v. Barre, 286 Mass. 593, 190 N.E. 815; Dresser v. New Hampshire Structural Steel Co., 296 Mass. 97, 4 N.E.2d 1012; Caira v. Caira, 296 Mass. 448, 6 N.E.2d 431; Clark v. M. W. Leahy Co., 300 Mass. 565, 16 N.E.2d 57; Carlson v. Dowgielewicz, 304 Mass. 560, 24 N.E.2d 538; Rosenberger v. L'Archer, Ohio App., 31 N.E.2d 700; Murphy v. Miettinen, 317 Mass. 633, 59 N.E.2d 252; Thomas v. Fritz, 318 Mass. 622, 63 N.E.2d 357; Wechsler v. Liner, 328 Mass. 152, 102 N.E.2d 92; Trautman v. Warfield & Rohr Co., 151 Md. 417, 135 A. 180; State To Use of Reynolds v. City of Baltimore, 199 Md. 289, 86 A.2d 618; Carstarphen v. Ivey, 66 Ga.App. 865, 19 S.E.2d 341; Sykes v. Stone & Webster Engineering Corp., 186 Va. 116, 41 S.E.2d 469; Coker

v. Gunter, 191 Va. 747, 63 S.E.2d 15; Warher v. Leder, 234 N.C. 727, 69 S.E.2d 6; Phillips v. Brinkley, 194 Va. 62, 72 S.E.2d 339; Nolan v. Daley, 222 S.C. 407, 73 S.E. 2d 449; Younger v. Giller Contracting Co., 143 Fla. 335, 196 So. 690; Johnson v. Taddoni, 5 Cir., 217 F.2d 91.

In Pinson v. Minidoka Highway Dist., 61 Idaho 731, 106 P.2d 1020, the rule for determining who at the particular time is the employer was stated as follows:

> "The general test is the *right* to control and direct the activities of the employee, or the power to control the details of the work to be performed and to determine how it shall be done, and whether it shall stop or continue, that gives rise to the relationship of employer and employee, and where the employee comes under the direction and control of the person to whom his services have been furnished, the latter becomes his temporary employer, and liable for compensation." 61 Idaho at page 737, 106 P.2d at page 1022.

This rule was quoted and followed in Laub v. Meyer, Inc., 70 Idaho 224, 214 P.2d 884; Ohm v. J. R. Simplot Co., 70 Idaho 318, 216 P.2d 952; and French v. J. A. Terteling & Sons, Inc., 75 Idaho 480, 274 P.2d 990. In the latter case this court further quoted from the Pinson case, as follows:

> "* * * there is a well established rule to the effect that the question of the identity of the person who pays compensation is not controlling, and is not a circumstance which is decisive or determinative of the question whether a person to whom an employee is lent becomes his employer." 61 Idaho at page 737, 106 P.2d at page 1022.

Plaintiff cites and relies upon Nissula v. Southern Idaho Timber Protective Ass'n, 73 Idaho 37, 245 P.2d 400. In that case the defendant rented a tractor with its operator from the plaintiff to be used in fighting a forest fire. The tractor was damaged by fire, which plaintiff charged to the negligence of the defendant. Defendant charged the damage was caused by the negligence of the operator, who remained the servant of the owner. It was there held that if the operator was selected by the owner, who retained the right to discharge him and substitute another, then in the manipulation and operation of the tractor itself the operator remained the servant of the owner, even though subject to the control of the defendant as to where he should go and what work he was to do. A nonsuit having been granted in that case the cause was remanded for a new trial on the issue as to whose negligence caused the injury. That case is not in point here, because in this case Park need not have been used in the unloading operation and could have been replaced at the wheel of the tractor by another driver at the will of Detweiler, Inc.

■ We are cognizant of Hiller v. Goodwin, 258 Ala. 700, 65 So.2d 152, and Hayes Freight Lines v. Hamilton, Ky., 257 S.W.2d 60, and the contrary holding by the Kentucky court as to the application of the loaned servant doctrine. However, we adhere to the rule as previously applied in this state, and as expressed in this opinion.

Instruction No. 20 is assigned as error. It reads:

"You are instructed that the fact that the Interstate Commerce Commission had by its regulations, or the defendant, Orange Transportation Company, had by its tariff, provided that the consignee of the boilers would have the duty of unloading them, does not, as a matter of law, make the driver of the truck the employee of Detweiler at the time of the accident, but it may be considered along with the other facts and circumstances appearing in the case."

This instruction may not be entirely erroneous, but it is misleading in that regulations imposed or approved by the Interstate Commerce Commission are binding upon the carrier and the consignee, so that where as here the duty devolved upon the consignee to unload, the carrier and the consignee could not lawfully contract to impose that duty upon the carrier. The presumption is that the carrier and consignee were acting lawfully and pursuant to the regulation. The burden was upon plaintiff to show that they were acting under agreement contrary to the regulation. Rockwell v. Grand Trunk Western Ry. Co., 264 Mich. 626, 250 N.W. 515; Rau v. Wilkes-Barre & E. R. Co., 311 Pa. 510, 167 A. 230; Columbus & G. Ry. Co. v. Owens, 153 Miss. 628, 121 So. 265, 62 A.L.R. 521; Bosarge v. Gaines, 5 Cir., 93 F.2d 800; Denton v. Yazoo & M. Valley R. Co., 284 U.S. 305, 52 S.Ct. 141, 76 L.Ed 310. See also, Annotations 102 A.L.R. 514, 149 A.L.R. 644.

■ The evidence is insufficient to sustain the jury's verdict to the effect that the duty of unloading was upon the defendant, Orange Transportation Co., or that Keith Park in operating the truck during the unloading was not doing so pursuant to the regulation, at the request of the consignee, and was not the loaned servant of Detweiler, Inc.

■ Park, being the loaned servant of Detweiler, Inc., at the time of the accident and injury to the plaintiff, plaintiff's exclusive remedy was compensation under the Workmen's Compensation Law. §§ 72–102, 72–203, I.C.; French v. J. A. Terteling & Sons, Inc., 75 Idaho 480, 274 P.2d 990; White v. Ponozzo, 77 Idaho 276, 291 P.2d 843.

The judgment and orders appealed from are reversed and the cause is remanded with directions to dismiss the action.

Costs to appellants.

KEETON, C. J., SMITH, J., and BAKER, D. J., concur.

PORTER, J., dissents.

McQUADE, J., not participating.