**Ray BRUMFIELD and Al LaMotte, Appellants,**

**v.**

**TRUCK INSURANCE EXCHANGE, a corporation, Appellee.**

**No. 18796.**

United States Court of Appeals Ninth Circuit.

May 26, 1964.

Elam, Burke, Jeppesen & Evans, Karl Jeppesen, Boise, Idaho, for appellants.

Moffatt, Thomas, Barrett & Blanton, Eugene Thomas, Boise, Idaho, for appellee.

Before CHAMBERS, MERRILL and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

This is an action for declaratory relief as to whether appellants are insured under appellee's policy, issued to one Johnson. Jurisdiction is based upon diversity of citizenship. The court entered summary judgment for appellee. The matter was submitted upon the deposition of appellant LaMotte and the affidavit of Johnson offered by appellee in support of its motion. We agree with the trial court that there is no genuine issue as to any material fact.

Appellant Brumfield owned a log loader, and hired appellant LaMotte to operate it. Brumfield contracted with Boise Cascade Co., which was doing logging in the mountains of Idaho, to load logs from log decks in the woods, created by Boise Cascade, onto trucks. Johnson owned and operated a truck, and he contracted with Boise Cascade to haul logs. He was injured while LaMotte was loading logs on Johnson's truck, and brought suit in the Idaho State Court against Brumfield and LaMotte.

Appellee had issued to Johnson, as named insured and owner of the truck, a policy of insurance against liability, containing the following pertinent provision:

"3. (a) (3). With respect to the described automobile or a substitute automobile, any employee of the named insured, provided the actual use of the automobile is under the direction and control of the named insured and is in the course of his employment with the named insured."

The sole question presented in this action is whether LaMotte was, at the time, an employee of Johnson, so that appellee would be obliged, under its policy, to defend Johnson's state court action against Brumfield and LaMotte. Appellants claim that, under the Idaho "loaned servant" doctrine, LaMotte was Johnson's employee at the time of the accident.

The log loader, a substantial piece of machinery, is a rotatable crane mounted on the back of a large truck. Attached to cables running through the end of the boom is a large tongs, actuated by the pull of the cables, which grabs and then lifts a log. It is then swung over to the truck and lowered in place. Johnson's truck was the usual large tractor-trailer rig for hauling logs.

On the day in question, Johnson arrived at the site where he was to pick up a load. Four loaders were there, and he was directed by a Boise Cascade employee to Brumfield's loader. LaMotte operated the loader, assisted by Ennis, also employed by Brumfield, as a hooker. Brumfield was not there. Johnson's empty trailer was carried "piggy back" upon the truck. It was attached to the loader cables by the hooker, and raised from the truck. Johnson then drove his truck from under the trailer, and the trailer was lowered by LaMotte into a

position under the boom, at the rear of the tractor in a position suitable for loading. Johnson hooked up the trailer to the tractor, and loading began.

In the process of loading, the boom of the loader, carrying the tongs, was swung over the log deck and the tongs dropped over a log. The hooker positioned the tongs and the log was then lifted over the truck and lowered in place. The truck had, over its cab, a board, known as a bang board, upon which Johnson stood. When the log was in place, he climbed down, loosened the tongs, and the process was repeated. From 24 to 30 logs made a load. The first layer of logs, known as a bunk load, was so placed as to "hold the stakes good and straight and tight." During the loading process, a log was shoved forward to form a "cat walk" from which Johnson could more easily get on and off the load. During part of the time he was on the load rather than the bang board while logs were being placed.

The full extent of control exercised by Johnson over LaMotte is described as follows: He would motion or point where the log was to be placed, and LaMotte would put it there. Sometimes he would indicate which log to load next. It was his load, and he directed the placing of the logs "to shift the weight of his load one way or another." He could see to do this better than LaMotte, who was behind the controls of the loader. Johnson was in charge of the load, LaMotte of the loader, which took considerable skill to operate. Johnson had no control of the manner of operation. He could not replace LaMotte, or himself operate the loader. LaMotte was hired and paid by, and took orders from, Brumfield. Because LaMotte knew how to load, he did not get a direction from Johnson as to the placement of each log, but from time to time Johnson indicated to LaMotte which log to load next, or where to put a log, or both.

The Idaho Supreme Court has had occasion to consider the loaned servant doctrine in a number of cases, e. g., Pinson v. Minidoka Highway District, 1940, 61 Idaho 731, 106 P.2d 1020; Nissula v. Southern Idaho Timber Protective Ass'n, 1952, 73 Idaho 37, 245 P.2d 400; Brown v. Arrington Const. Co., 1953, 74 Idaho 338, 262 P.2d 789; Cloughley v. Orange Transportation Co., 1958, 80 Idaho 226, 327 P.2d 369. Nissula seems to be the leading case, and it cites and relies upon the Restatement (see 1 Restatement (Second), Agency, §§ 227, 220(2) (1958)).

Having carefully considered those cases, and the Restatement, and bearing in mind that the trial judge is himself an Idaho lawyer, whose views are entitled to some deference from us, we are of the opinion that the Idaho Supreme Court would hold as the trial court did, that as a matter of law LaMotte was not the loaned servant of Johnson. Rather, here we have two parties, each having a contract with Boise Cascade, but no contractual relationship to each other, cooperating in carrying out their obligations to it. Cooperation of this kind does not make an employee of one the servant of the other, unless there be the type of relationship described in the Restatement, § 220(2), supra. Here, Johnson had no control over the details of the work; his control related only to the result, and was minimal. Each was in a distinct occupation. In the locality, such work as LaMotte did was not customarily done under supervision. Substantial skill was required of LaMotte. Brumfield, not Johnson, supplied the loader, which was LaMotte's place of work. The length of time during which the relationship with Johnson continued was brief. Johnson did not pay LaMotte. The work of loading was Brumfield's regular business; Johnson's was hauling logs. The parties did not believe that Johnson was the master, or LaMotte the servant. In short, practically all of the indicia listed in section 220(2) of the Restatement lead to the conclusion that LaMotte was not Johnson's servant, but Brumfield's. Those on which the Idaho Supreme Court lays particular stress also point in the same direction. See Pinson, supra, 61 Idaho at p. 737, 106 P.2d 1020;

Nissula, supra, 73 Idaho at pp. 41–42, 245 P.2d 400; Brown, supra, 74 Idaho at pp. 342–343, 262 P.2d 789; Cloughley, supra, 80 Idaho at p. 235, 327 P.2d 369.

Affirmed.